IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

SARA KAYE RUFFNER,

    Plaintiff,

        v.                      CIVIL NO.: WDQ-11-1880

MD OMG EMP LLC,

    Defendant.

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Sara Ruffner sued MD OMG EMP LLC ("MD OMG") for retaliatory discrimination in violation of the Maryland Fair Employment Practices Act ("FEPA"), Md. Code Ann., State Gov't § 20-606. For the following reasons, MD OMG's motion for summary judgment will be granted.

I.    Background[1]

MD OMG, an Ohio company, owns Marley Neck Health & Rehab Center ("Marley"), a "skilled nursing short term rehabilitation center" in Glen Burnie, Maryland.[2] ECF No. 5; ECF No. 33-2 at 154 (facsimile from Ruffner, June 8, 2008); ECF No. 33-3 at 2

---

[1] In reviewing a motion for summary judgment, the non-movant's evidence "is to be believed, and all justifiable inferences are to be drawn in [his] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[2] MD OMG acquired Marley in 2008 when it purchased TransHealth, Marley's previous owner. ECF No. 33-3 at 2 ¶3 (Aff. of Margaret Hubbard).

¶2.[3]  Ruffner, a 57 year old Caucasian resident of Maryland, had worked at Marley for 27 years in 2010.  ECF No. 36-2 ¶1 (Ruffner Aff.).  In July 2009, Ruffner was Marley's Culinary Director.  ECF No. 33-2 at 9, 25:8-9.[4]  She reported directly to Margaret Hubbard, an African-American woman who became Marley's Executive Director in July 2009.  Id. at 9, 25:10-15; ECF No. 36-2 ¶2.

Although Ruffner had not had performance problems with past executive directors, she repeatedly received unsatisfactory performance reviews and regular criticism from Hubbard during 2009 and 2010.  ECF No. 36-2 ¶3.  On May 5, 2010, Hubbard placed Ruffner on a probationary program for poor performance.  ECF No. 33-3 ¶13.

On June 3, 2010, Ruffner met with Jason Sparks and Brian Wierkykas, members of MD OMG's "corporate human resources" staff.[5]  She complained that Hubbard required Ruffner to work extra hours supervising her staff, only granted some of Ruffner's requested leave time, and demanded menu changes that Ruffner could not accommodate in her budget.  Id. at 16-17, 51-

---

[3] ECF No. 33-2 includes 16 documents: Ruffner's deposition transcript and 15 exhibits to the deposition.  See ECF No. 33-2.  The ECF number and the document title will be used to denote exhibits.

[4] Deposition of Sara Ruffner.  Each ECF page contains four transcript pages with line numbers.  The first page cite above denotes the ECF page; the second page cite denotes the transcript page number.

[5] ECF No. 33-2 at 16, 51:20-22, 52:1-3, 53:8-18(Ruffner Dep.).

57.  She told them that her staff was unhappy because Hubbard had increased the staff's workload and cut their hours.  *Id.* at 17, 5-8.

On June 8, 2010, Ruffner sent by facsimile a written supplement to Sparks, with additional complaints about Hubbard. ECF No. 33-2 at 154-63 (Ruffner fax).[6]  She ended the letter by comparing her position to "driving for miles with a police car on your rear end waiting for you to do something wrong."  *Id.* at 162.

Ruffner "never really termed or figured that [she was complaining about] discrimination, . . . [she] was mainly reporting [her] concerns for [her] job and well-being."  *Id.* at 16, 51:18-21, 52:12-13.  She did not discuss "being treated differently because of [her] age," but she "made [Sparks and Wierkykas] aware that [she] felt [she] was a target" because when Ruffner said she had been working at Marley for 27 years

---

[6] She said Hubbard favored over other kitchen employees--all Ruffner's subordinates-- a kitchen employee she was using as a "spy," interfered with Ruffner's staff teamwork, ignored employee nominations for the "employee of the month" award, favored or disfavored other subordinate employees, complained about the staff's food, told Ruffner she needed to "step out of [the] box" and take initiative, lied during a mock health inspection, denied time off to all the directors at Marley, neglected her own duties, and had engendered frustration with other staff.  *Id.* at 155-61.  Ruffner did not discuss her age or race, or Hubbard's treatment of her compared to that of other directors or other staff members.  *See id.*

and knew how to manage herself, Hubbard said, "that did it."
*Id.* at 16, 52:15-22, 53:1-4.[7]

Ruffner acknowledged that her complaints did not indicate that she thought she was being discriminated against:

> Q: . . . None of these conversations, complaints, grievances suggest or indicate in any way that you believe you're being discriminated against, correct?
>
> A: I felt I was.
>
> Q: May have felt that, you didn't tell that to Jason or Brian, did you?
>
> A: At that time, no, I did not.
>
> Q: Okay. Did you ever tell anyone at [the company], or in the regional or corporate management that you were being discriminated against?
>
> A: No
>
> . . .
>
> Q: When did you tell building HR that you were being discriminated against?
>
> A: I didn't say discriminated.

---

[7] In her deposition, Ruffner stated that she told an HR representative that she felt she was being treated "more harshly than other employees because of [her] . . . age." ECF No. 33-2 at 25, 87:10-13. When asked for details, she said:

> I made [the representative] aware, okay, when Margaret first told me back in August of 2009, I was telling Theresa, the building HR [representative], I was telling her my concerns.

*Id.* at 25, 87:14-20. When asked again, she said that the only person "in the company [she] ever told that [she] thought there was a link between [her] race and age and the problems [she] was having with Margaret" was a cook she supervised. *Id.* at 26, 90:4-18.

> Q: You told building HR that you had these general gr[i]pes about shakes and workloads and all that, right?
>
> A: I discussed with her about the way I was being treated.
>
> Q: Okay. Did you tell building HR that you were being discriminated against?
>
> A: I did not use the word discriminated, no, I did not.

Id. at 85:20-22, 86:1-10, 19-22, 87:1-9.

On August 3, 2010, Hubbard told Ruffner she was being terminated for performance problems, including that Ruffner had yelled at an employee.[8] On August 18, 2010, Ruffner filed a discrimination charge with the Maryland Commission on Human Relations ("MCHR"), alleging discrimination "based on [her] age, 57," and retaliation "for filing an in-house complaint of discrimination," in violation of the FEPA. ECF No. 33-2 at 56 (discrimination charge). On June 6, 2011, Ruffner filed a complaint in the Circuit Court of Maryland for Anne Arundel County, alleging discrimination on the basis of her race and retaliation for filing a grievance against Hubbard. ECF No. 2 ¶¶21-35. She sought $150,000 for back pay and back benefits,

---

[8] Id. at 37, 137:1-13 (Ruffner dep.) (saying that Hubbard told Ruffner she was being terminated for yelling at another employee while Ruffner was on probation); ECF No. 33-3 ¶18 (Hubbard aff.) ("[I]t was necessary to terminate Ms. Ruffner's employment based on her ongoing and uncorrected unacceptable work performance."); ECF No. 33-3 at 106 (termination notice) (citing "[c]ontinual performance issues").

$300,000 "in compensatory damages," and $500,000 in punitive damages. *Id.* at 4-5. On June 22, 2011, the MCHR found that there was no probable cause to believe MD OMG discriminated against Ruffner because of her age, or retaliated against her. ECF No. 33-3 at 108-11 (MCHR written finding).

On July 8, 2011, MD OMG removed the Anne Arundel action to this Court on the basis of diversity jurisdiction. ECF No. 1. On December 7, 2011, MD OMG moved for judgment on the pleadings on the race discrimination claim. ECF NO. 25. On December 23, 2011, Ruffner conceded that "the race discrimination claim is barred by her failure to exhaust administrative remedies." ECF No. 26. On February 20, 2012, the Court entered judgment in MD OMG's favor on the race discrimination claim. ECF No. 31. On March 8, 2012, MD OMG moved for summary judgment on retaliation, the sole remaining claim. ECF No. 33. Ruffner has opposed the motion. ECF No. 36.

II. Analysis

    A. Standard of Review

Under Rule 56(a), summary judgment "shall [be] grant[ed] . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[9] In considering the

---

[9] Rule 56(a), which "carries forward the summary-judgment standard expressed in former subdivision (c)," changed "genuine

motion, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in [its] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (citation and internal quotation marks omitted). A party opposing summary judgment "may not rest upon the mere allegations or denials of [her] pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial."  *Id.* at 525.

B.   The *McDonnell-Douglas* Framework

Unless a plaintiff has direct evidence of impermissible discrimination, she must establish discrimination or retaliation under the three-pronged burden-shifting framework of *McDonnell*

---

'issue' [to] genuine 'dispute,'" and restored the word "'shall' . . . to express the direction to grant summary judgment."  Fed. R. Civ. P. 56 advisory committee's note.

*Douglas Corp. v. Green*, 411 U.S. 792 (1973).[10] Under that framework, first, the plaintiff must establish a prima facie case of retaliation. If she makes that showing the defendant must identify "evidence that it acted on a legitimate, non-discriminatory basis." The plaintiff then must prove that the defendant's proffered reasons were a pretext for unlawful discrimination. *Worden v. SunTrust Banks, Inc.*, 549 F.3d 334, 341 (4th Cir. 2008).

C. Retaliatory Discharge

The FEPA prohibits race and age discrimination, and bars an employer from retaliating against an employee who has opposed such discrimination.[11] To establish a prima facie case for retaliatory discharge, a plaintiff must show that (1) she engaged in a protected activity, (2) the defendant terminated her, and (3) the protected activity was causally connected to her termination.[12]

---

[10] *Worden v. SunTrust Banks, Inc.*, 549 F.3d 334, 341 (4th Cir. 2008). Maryland courts "consult[] federal precedent in the equal employment area" because of the "dearth of [Maryland] jurisprudence on this issue." *Taylor v. Giant of Md., LLC*, 33 A.3d 445, 459 (Md. 2011).

[11] *See* Md. Code Ann., State Gov't § 20-606(a) & (f).

[12] *See Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007) (defining elements of a retaliation claim under Title VII of the Civil Rights Act of 1964); *Chappell v. S. Md. Hosp., Inc.*, 578 A.2d 766, 772-73 (Md. 1990) (retaliation claim under Maryland law has the same elements as a Title VII retaliation claim).

Protected activity includes "staging informal protests and voicing one's own opinions in order to bring attention to an employer's discriminatory activities, as well as complain[ts] ... about suspected violations."[13] "[F]or an employee's complaints to constitute a 'protected activity,' the employee must have held a reasonable belief that the complained-of conduct violated [the antidiscrimination statute]." *Gallina v. Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.*, 123 F. App'x 558, 565 (4th Cir. 2005). Protected activity does not include opposition to "all unlawful practices" or "practices the employee simply thinks are somehow unfair"; the employee must have "actually opposed employment practices made unlawful by the [antidiscrimination statute]."[14]

The employee must, at least implicitly or indirectly, complain about or oppose prohibited discrimination.[15] Complaints

---

[13] *E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005) (alterations in original) (internal citations and quotation marks omitted).

[14] *McNair v. Computer Data Sys., Inc.*, 172 F.3d 863 (table), 1999 WL 30959, at *5 (4th Cir. Jan. 26, 1999); *see also Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 543-44 (4th Cir. 2003) (employee engaged in protected activity when she complained to her supervisors that "she had not been promoted . . . because of racial discrimination").

[15] *See McNair*, 1999 WL 30959, at *5 (plaintiff, whose complaint about title change did not contain "even implicit or indirect opposition to racial or sexual discrimination by anyone," did not engage in protected activity).

9

about a supervisor's "rude" conduct,[16] or other generalized complaints which do not alert the employer or person receiving the complaint "that [the employee's] complaints were based on an allegation of discrimination," are not protected activity.[17]

Ruffner has not shown that her complaints alerted MD OMG or Human Relations representatives that her complaints were based on race or age or other prohibited discrimination. The undisputed evidence is that Ruffner complained to Sparks about Hubbard's staffing issues and assertions that Ruffner was not doing her job. *See* ECF No. 33-2 at 154-163. Ruffner's written complaint does not mention "discrimination," her race, her age, or differences in Hubbard's treatment of her compared to treatment of other similarly situated employees. *See id.* Ruffner has acknowledged that when she worked for MD OMG, she "never really termed or figured that [Hubbard's actions] would be discrimination." ECF No. 33-2 at 16, 51:18-21. She has also

---

[16] *Brown v. Nguyen*, No. 08-0817, 2010 WL 836819, *3 (D.S.C. Mar. 5, 2010).

[17] *Sajadian v. Am. Red Cross*, 202 F.3d 260 (table), 1999 WL 1111455, *1 (4th Cir. Dec. 7, 1999) ("Although she raised general concerns about her workload, hours, and denial of leave, there is no evidence that either the [defendant or recipient of the complaints] was aware that her complaints were based on an allegation of discrimination."); *Felix v. Sun Microsystems, Inc.*, No. 03-1304-JFM, 2004 WL 911303, *19 (D. Md. Apr. 12, 2004) (plaintiff's complaints that her husband's discharge was "wrong," and generalized allegations of "retaliation . . . related to her husband" were "so generalized that they must fail as a matter of law" with respect to protected activity).

acknowledged that the only person to whom she revealed a belief that Hubbard treated her harshly because Ruffner had worked at Marley for 27 years was a cook, her subordinate. *Id.* at 26, 90:4-18. She told Sparks she believed she was a "target" because she had worked at Marley for 27 years, but did not indicate that her age--or any other protected characteristic--was a motivating factor for her treatment. *Id.* at 16, 53:2-4.

Ruffner swore that she "complained about [Hubbard's] discriminatory behavior," but does not dispute that her complaints did not discuss or suggest a concern about unlawful discrimination. ECF No. 36-2 ¶22 (Ruffner Aff.). That she "indicated that [she] was going to seek legal counsel," *id.*, is not protected activity; it did not put Sparks or MD OMG on notice that Ruffner believed she was being discriminated against.[18]

As Ruffner has not established that she engaged in protected activity before she was fired, she has not established a prima facie case of discrimination.[19] MD OMG is entitled to summary judgment.

---

[18] *Sajadian*, 1999 WL 1111455, *1; *see also Grey v. Dallas Indep. Sch. Dist.*, 265 F. App'x 342, 346-47 (5th Cir. 2008) (plaintiff's statement to supervisors that they could "talk to [his] attorney" was not protected activity).

[19] *Holland*, 487 F.3d at 218.

III. Conclusion

For the reasons stated above, MD OMG's motion for summary judgment will be granted.

_____8/13/12_____          _____/s/_____
Date                          William D. Quarles, Jr.
                              United States District Judge